UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA, | ) ) ) | |
| v. | ) ) | No. 1:25-cr-10129-JEK |
| WANDIS CLEIA GUIMARAES, | ) ) | |
| Defendant. | ) ) | |

**MEMORANDUM AND ORDER ON THE UNITED STATES'
REQUEST FOR DISMISSAL OF THE INDICTMENT**

**KOBICK, J.**

Defendant Wandis Cleia Guimaraes was charged with conspiracy to distribute and possess with intent to distribute controlled substances, in violation of 21 U.S.C. § 846. After she was released on conditions by the Chief Magistrate Judge, she was taken into custody by U.S. Immigration and Customs Enforcement ("ICE") and held in a detention facility in Arizona. Notwithstanding the ongoing criminal proceedings, ICE chose to deport Guimaraes to Brazil in late May 2025. The U.S. Attorney's Office then sought dismissal of the indictment under Federal Rule of Criminal Procedure 48(a). Guimaraes agrees that dismissal is warranted in light of her removal from the country, but she contends that the dismissal should be *with* prejudice to reindictment on the same charge rather than, as the government contends, *without* prejudice.

Dismissals under Rule 48(a) are typically without prejudice, including in situations, like this, where the Executive Branch chooses to deport a defendant rather than continuing to pursue criminal charges against her. But three circumstances unique to this case—namely, ICE's violation of a court order; ICE's refusal to make Guimaraes available for her arraignment; and ICE's choice to detain Guimaraes in Arizona, far from counsel, thus jeopardizing her ability to consult with

counsel in preparation for her defense—convince the Court that dismissal without prejudice is not in the public interest. The Court will, accordingly, allow the government's request to dismiss the indictment, but such dismissal will be with prejudice.

## BACKGROUND

Guimaraes was charged by criminal complaint in March 2025 with one count of conspiracy to distribute and to possess with intent to distribute controlled substances, in violation of 21 U.S.C. § 846. ECF 4. At her initial appearance, held on March 10, 2025, Guimaraes was appointed counsel and, three days later, consented to detention without prejudice because she did not have a viable release plan. ECF 13, 23, 26, 34. On March 21, 2025, having developed a proposal for release on conditions, Guimaraes sought a detention hearing. ECF 34. The Chief Magistrate Judge held that hearing on April 2, 2025, and thereafter released Guimaraes on conditions including, among others, that she reside with her pastor. ECF 40, 52.

On April 10, 2025, Guimaraes was indicted on the same conspiracy charge. ECF 46. The Court scheduled an arraignment for Guimaraes and her three co-defendants for April 23, 2025, via a remote proceeding. ECF 49, 54. At some point between Guimaraes' release on conditions and the scheduled arraignment, ICE took Guimaraes and two co-defendants into its custody pending deportation proceedings. ECF 57, at 1. The Assistant United States Attorney ("AUSA") provided ICE with the names and identifiers of Guimaraes and her two co-defendants, the date and time of the arraignment, and the Zoom link provided by the Court for the arraignment. *Id.* Nevertheless, at the April 23, 2025 arraignment, Guimaraes and the two co-defendants in ICE custody did not appear, though their counsel were present. ECF 54. The Court ordered the AUSA to investigate and provide a status report on what had transpired. *Id.* The AUSA reported that ICE did not share the information she had forwarded about the arraignment with the individuals within the detention

facilities who could have facilitated Guimaraes and her co-defendants' appearances. ECF 57, at 2. She further reported that "not all ICE detention facilities have the technological capability to facilitate Zoom appearances for detainees," but that the U.S. Attorney's Office was working with ICE to develop a protocol to "make ICE detainees available for future federal Court appearances while they remain in ICE custody." *Id.*

The Court thereafter scheduled a second arraignment for June 3, 2025. ECF 58. On May 16, 2025, the government filed a motion seeking writs of habeas corpus ad prosequendum directed to three ICE detention facilities—including to a facility in Eloy, Arizona, where Guimaraes was held—to facilitate the three detained defendants' appearances at the arraignment. ECF 59. The Court granted the government's motion and entered the orders it proposed. ECF 60. With respect to Guimaraes, the Court ordered "any . . . authorized federal agent" to "turn over to the United States Marshal for the District of Massachusetts" the body of Guimaraes, "now detained under [their] custody," so that she could appear via Zoom at her June 3, 2025 arraignment. ECF 63.

Guimaraes did not appear at this second arraignment. ECF 66. Three days earlier, the government had sought dismissal of her indictment pursuant to Federal Rule of Criminal Procedure 48(a), but it did not provide any reason for the request, indicating only that dismissal was "in the interests of justice." ECF 64. At the June 3, 2025 arraignment, counsel for Guimaraes learned that his client had been deported to Brazil, notwithstanding the court order requiring her federal custodians to make her available for her arraignment. ECF 66. Two days later, Guimaraes, through counsel, indicated that while she agreed with the government's request to dismiss the indictment under Rule 48(a), she believed that such dismissal should be with prejudice rather than without prejudice. ECF 71. After receiving further briefing from the government and Guimaraes, ECF 72, 79, 80, the Court held a hearing and took the matter under advisement, ECF 81.

3

**DISCUSSION**

**I.    Rule 48(a) Dismissal.**

Federal Rule of Criminal Procedure 48(a) provides that "[t]he government may, with leave of court, dismiss an indictment, information, or complaint." The Supreme Court has explained that the words "leave of court" in Rule 48(a) "obviously vest some discretion in the court" to decide whether to dismiss an indictment on the government's motion. *Rinaldi v. United States*, 434 U.S. 22, 29 n.15 (1977) (per curiam). But the scope of the court's discretion is narrow. *See United States v. Perez-Franco*, 873 F.2d 455, 460 (1st Cir. 1989). A court may not substitute its judgment for that of the prosecutor, who is entitled to a presumption of good faith in her determination that an indictment should be dismissed. *See United States v. Salinas*, 693 F.2d 348, 351 (5th Cir. 1982); *United States v. Adams*, --- F. Supp. 3d ---, 2025 WL 978572, at *14 (S.D.N.Y. Apr. 2, 2025); *United States v. Poindexter*, 719 F. Supp. 6, 10 (D.D.C. 1989). Principally, the "leave of court" requirement in Rule 48(a) advances two objectives: (1) protecting defendants against prosecutorial harassment and (2) ensuring that any dismissal is not contrary to the public interest. *See Rinaldi*, 434 U.S. at 29 n.15; *see also* T. Ward Frampton, *Why Do Rule 48(a) Dismissals Require "Leave of Court"?*, 73 STAN. L. REV. ONLINE 28, 37 (June 2020) (Rule 48(a)'s "leave of court" requirement "was implemented to give district judges a modest means of safeguarding the public interest").

To ensure that the court has a valid basis for exercising its discretion, the government must state its reasons for any request for dismissal under Rule 48(a). *See United States v. Derr*, 726 F.2d 617, 619 (10th Cir. 1984) ("[T]o honor the purpose of the rule, the trial court at the very least must know the prosecutor's reasons for seeking to dismiss the indictment and the facts underlying the prosecutor's decision."); *United States v. Ammidown*, 497 F.2d 615, 620 (D.C. Cir. 1973) ("Rule

4

48(a)'s requirement of judicial leave . . . contemplates exposure of the reasons for dismissal[.]"). A conclusory assertion, such as the unadorned claim that dismissal is in the interests of justice, is not sufficient. *See Salinas*, 693 F.2d at 352 ("the prosecutor is under an obligation to supply sufficient reasons—reasons that constitute more than a mere conclusory interest"—in her request for dismissal (quotation marks omitted)). But once the prosecutor has stated her reasons for the government's request for dismissal, the court should grant the request unless it has "an affirmative reason to believe that the dismissal motion was motivated by considerations contrary to the public interest." *United States v. Hamm*, 659 F.2d 624, 631 (5th Cir. 1981).

Even when the court has determined that dismissal of an indictment is in the public interest, it retains discretion to order dismissal with or without prejudice to reindictment on the same charges. "Customarily," the First Circuit has explained, "Rule 48(a) dismissals are without prejudice and permit the government to reindict within the statute of limitations." *United States v. Raineri*, 42 F.3d 36, 43 (1st Cir. 1994); *accord United States v. Matta*, 937 F.2d 567, 568 (11th Cir. 1991); *United States v. Flemmi*, 283 F. Supp 2d 400, 409 n.15 (D. Mass. 2003). But dismissal with prejudice may be appropriate "if retrial would be fundamentally unfair" or would "constitute harassment." *Raineri*, 42 F.3d at 43 (citing *United States v. Rossoff*, 806 F. Supp. 200, 202-03 (C.D. Ill. 1992)). In assessing whether a Rule 48(a) dismissal should be with or without prejudice, "courts have generally looked to the same principles that motivate the 'leave of court' requirement," including whether dismissal without prejudice is in the public interest. *Adams*, 2025 WL 978572, at *21; *see United States v. Madzarac*, 678 F. Supp. 3d 42, 46 (D.D.C. 2023). Relevant factors may also include "(1) the purpose of the government's dismissal, (2) the presence or absence of good faith, and (3) the objective effect that dismissal without prejudice would have on the defendant." *Madzarac*, 678 F. Supp. 3d at 48. In all events, the inquiry is case specific, and

no one factor is required for a court to conclude that dismissal with or without prejudice is warranted. *See Adams*, 2025 WL 978572, at *21-22.

**II.     Request to Dismiss Guimaraes' Indictment.**

The parties here agree that, in light of Guimaraes' removal from the United States, her indictment should be dismissed under Rule 48(a). The Court concurs. Guimaraes' deportation to Brazil has rendered her unable to consult with her attorney, review the evidence against her, confront adverse witnesses, and assist in preparing a defense. Her removal by ICE has plainly infringed her Sixth Amendment right to the assistance of counsel in her defense, and dismissal of the indictment is an appropriate remedy. *See, e.g.*, *United States v. Castillo*, 537 F. Supp. 3d 120, 130-31 (D. Mass. 2021) (dismissal of indictment warranted when the government deported the defendant during ongoing criminal proceedings against him); *United States v. Pavel*, No. 19-cr-94, 2021 WL 817889, at *2, *4 (W.D. Va. Mar. 3, 2021) (same); *United States v. Escobar-Mariscal*, No. 19-cr-02777, 2020 WL 4284406, at *3, *5 (D. Ariz. July 27, 2020) (same); *United States v. Coronado-Vejar*, No. 19-cr-01962, 2020 WL 2782502, at *2-3 (D. Ariz. May 29, 2020) (same). The AUSA acted in accordance with the public interest when she promptly requested dismissal under Rule 48(a) upon learning of Guimaraes' removal.

The nub of the dispute is whether the dismissal should be with or without prejudice. Guimaraes contends that whenever ICE chooses to deport a defendant midstream in a criminal prosecution, dismissal of the indictment should be with prejudice. In Guimaraes' view, such a deportation denies a defendant her day in court, denies her the opportunity to clear her name with an acquittal, denies her speedy trial rights, and may, as in this case, undercut an order under the Bail Reform Act releasing her on conditions pending trial. The government disagrees, contending that dismissal of an indictment without prejudice does not run afoul of deported defendants' rights

6

and, as the First Circuit has held, does not even inflict the type of prejudice that gives a defendant standing to appeal. *See United States v. Moller-Butcher*, 723 F.2d 189, 190-91 (1st Cir. 1983) ("[A]bsent extraordinary circumstances, a defendant has no standing to appeal the dismissal of an indictment" because "a defendant is not injured by the dismissal of an indictment without prejudice pursuant to Fed. R. Crim. P. 48(a)."). Other sessions of this Court have taken different views on this issue. *Compare Castillo*, 537 F. Supp. 3d at 131 (dismissing indictment without prejudice following the defendant's deportation), *with* ECF 56, *United States v. de la Cruz*, No. 25-cr-10106 (D. Mass. June 23, 2025) (ordering dismissal of an indictment with prejudice upon the defendant's deportation).

Here, the Court concludes that, absent indications that the Executive Branch has acted in bad faith or that dismissal without prejudice would conflict with the public interest, deportation of a defendant during a criminal prosecution typically does not warrant dismissal of the indictment with prejudice. That conclusion follows from the First Circuit's instruction that, in general, dismissals under Rule 48(a) must be without prejudice to reindictment within the statute of limitations. *Raineri*, 42 F.3d at 43. A dismissal without prejudice terminates criminal proceedings against the defendant so long as, once deported, she does not reenter the United States during the statute of limitations. Such a dismissal leaves the defendant no worse off than if she had not been indicted in the first place. *See Castillo*, 537 F. Supp. 3d at 131. And as the Supreme Court has observed, "[d]ismissal without prejudice is not a toothless sanction: it forces the Government to obtain a new indictment if it decides to reprosecute, and it exposes the prosecution to dismissal on statute of limitations grounds." *United States v. Taylor*, 487 U.S. 326, 342 (1988); *see also United States v. Correia*, 531 F.2d 1095, 1100 (1st Cir. 1976) ("Dismissal of an indictment is strong medicine, even where reindictment is possible.").

7

Guimaraes protests that when ICE takes into custody a defendant who has been released on conditions pending trial, its actions undermine the integrity of court orders and merit reprobation. The Court disagrees. The Bail Reform Act ("BRA") governs a criminal defendant's detention or release pending trial. *See* 18 U.S.C. § 3142(e) (authorizing pretrial detention of a defendant only when a court determines, following a hearing, that "no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community"). A different statute, the Immigration and Nationality Act ("INA"), governs ICE's authority to civilly detain a noncitizen pending removal proceedings. *See* 8 U.S.C. §§ 1225, 1226, 1231. While the BRA confers authority on the judiciary, the INA confers authority on the Executive Branch to facilitate the removal of noncitizens from the country. *See United States v. Soriano Nunez*, 928 F.3d 240, 245 (3d Cir. 2019). The courts of appeals have widely concluded that the BRA and INA work in parallel, and do not conflict, because they "serve separate purposes and are performed by different authorities." *United States v. Vasquez-Benitez*, 919 F.3d 546, 552 (D.C. Cir. 2019); *accord United States v. Pacheco-Poo*, 952 F.3d 950, 952 (8th Cir. 2020); *United States v. Lett*, 944 F.3d 467, 470 (2d Cir. 2019); *Soriano Nunez*, 928 F.3d at 245-47; *United States v. Veloz-Alonso*, 910 F.3d 266, 270 (6th Cir. 2018). So long as ICE does not detain a non-citizen to "skirt" a court's decision in "setting the terms of [that person's] release under the BRA," its civil "detention does not offend separation-of-powers principles simply because a federal court, acting pursuant to the BRA," has ordered the same non-citizen released on conditions pending criminal trial. *Vasquez-Benitez*, 919 F.3d at 552 (quotation marks omitted).

Nevertheless, when ICE takes a criminal defendant into custody pending removal proceedings, it must abide by all court orders entered in the criminal proceedings and ensure that the defendant's constitutional and statutory rights are preserved. Failure to comply with court

8

orders, or failure to respect a defendant's rights, may justify dismissal of an indictment with prejudice. Such conduct can give rise to an inference of bad faith on the part of the Executive Branch, and reindictment following such noncompliance would, in many circumstances, "be fundamentally unfair." *Raineri*, 42 F.3d at 43 (citing *Rossoff*, 806 F. Supp. at 202-03). Deterring such conduct through a dismissal with prejudice is consistent with this Court's duty to safeguard the public interest.

Several considerations, each involving ICE's interactions with Guimaraes, lead the Court to conclude that such an outcome is warranted in this case. First, ICE violated a court order when it chose to deport Guimaraes notwithstanding the order that she be made available for her second arraignment. On May 19, 2025—at the government's request—this Court issued a writ of habeas corpus ad prosequendum ordering Guimaraes' federal custodians to make her available via Zoom for her June 3, 2025 arraignment. ECF 60, 63. ICE was thus on notice since May 19 that Guimaraes had to be produced on June 3 for her arraignment, but it nevertheless chose to deport her before that date, precluding her appearance. If ICE wished to deport Guimaraes before the arraignment, it could have worked with the prosecutor to seek relief from the Court's order; instead, ICE took unilateral action to remove her from the country. *Cf. United States v. Hastings*, 847 F.2d 920, 925 (1st Cir. 1988) (in the Speedy Trial Act context, explaining that "delay which results either from intentional noncompliance with the Act or from actions designed to gain unfair prosecutorial advantage weighs heavily in favor of dismissal with prejudice"); *United States v. Urizar Lopez*, 587 F. Supp. 3d 835, 845 (S.D. Iowa 2022) (dismissing indictment with prejudice for violation of speedy trial right under the Sixth Amendment where ICE "would not honor a writ from th[e] Court" and "chose to prioritize removal proceedings over the criminal prosecution").

Second, ICE denied Guimaraes the procedural protections of an arraignment by failing to facilitate her appearance at her April 23, 2025 arraignment before she was deported. The arraignment, governed by Federal Rule of Criminal Procedure 10, "is intended to be a safeguard for due process." *Merritt v. Hunter*, 170 F.2d 739, 741 (10th Cir. 1948). The Supreme Court has described an arraignment as "a sine qua non to the trial itself," because it is "the preliminary stage where the accused is informed of the indictment and pleads to it, thereby formulating the issue to be tried." *Hamilton v. Alabama*, 368 U.S. 52, 54 n.4 (1961). An arraignment must take place in open court, and during the hearing, the court must ensure that the defendant has received a copy of the indictment or information and has the opportunity to have the charging document read to her. *See* Fed. R. Crim. P. 10(a). By refusing to produce Guimaraes for her arraignment before deporting her to Brazil, notwithstanding the AUSA's conveyance of the information regarding the hearing, ICE denied Guimaraes the basic right to be informed of the charge pending against her in the indictment.

Third, the Court has concerns about whether ICE burdened Guimaraes' right to consult with counsel in order to prepare her defense. The Sixth Amendment guarantees defendants the right "[i]n all criminal prosecutions . . . to have the Assistance of Counsel" in their defense. U.S. CONST. amend. VI. Once the right to counsel attaches "at or shortly after the initiation of adversary judicial criminal proceedings," *United States v. Melendez-Santiago*, 644 F.3d 54, 59 (1st Cir. 2011) (quotation marks omitted), the defendant is guaranteed counsel "during any 'critical stage' of the postattachment proceedings," *Rothgery v. Gillespie Cnty.*, 554 U.S. 191, 212 (2008). "[T]o deprive a person of counsel during the period prior to trial," the Supreme Court has explained, "may be more damaging than denial of counsel during the trial itself." *Maine v. Moulton*, 474 U.S. 159, 170 (1985). Defense counsel must, among other things, be able to communicate formal plea offers to

the defendant, provide advice during the plea bargaining process, describe risks in sentencing, give advice about the possibility of deportation, assist in any attempt by the defendant to cooperate with the government, and consult with the defendant on lines of defense. *See Betschart v. Oregon*, 103 F.4th 607, 620-21 (9th Cir. 2024). When the government unreasonably interferes with a defendant's ability to consult confidentially with counsel in advance of trial, that interference can itself amount to a Sixth Amendment violation. *See, e.g.*, *Nordstrom v. Ryan*, 762 F.3d 903, 910 (9th Cir. 2014); *Benjamin v. Fraser*, 264 F.3d 175, 185 (2d Cir. 2001).

The record is not clear on the extent to which the ICE detention center facilitated or inhibited Guimaraes' right to consult with her attorney. On the one hand, defense counsel represented at the hearing that he did not attempt to contact her during the time she was detained in Arizona before her deportation. On the other hand, ICE chose to detain Guimaraes in Arizona, far from her court-appointed attorney and the District of Massachusetts. *See United States v. Allick*, No. 2011-cr-020, 2012 WL 32630, at *2-5 (D.V.I. Jan. 5, 2012) (outlining the standard for analyzing a Sixth Amendment claim based on alleged inconvenience caused by distance between a pretrial detention facility and a court). Further, ICE did not make Guimaraes available for her April 23, 2025 arraignment, before or after which she might have consulted with her attorney in a private Zoom room. And, of serious concern, the record reflects that some ICE detention facilities do not have the technological capability to facilitate Zoom appearances for detainees in criminal cases, raising the question whether these facilities are respecting defendants' right to consult with counsel. ECF 57, at 2. Because the Court lacks evidence regarding the extent to which Guimaraes' Sixth Amendment right to counsel was burdened before her deportation, its determination that dismissal with prejudice is warranted does not depend on any conclusion regarding this right. But where ICE unreasonably burdens a criminal defendant's ability to consult with counsel before

deportation, such conduct can justify dismissal of an indictment with prejudice following the defendant's deportation. *Cf. United States v. Trujillo-Alvarez*, 900 F. Supp. 2d 1167, 1180 (D. Or. 2012) (explaining that Sixth Amendment rights were jeopardized where ICE deprived the defendant "and his court-appointed counsel of the ability to meet and work together to prepare for his defense at trial without undue inconvenience or hardship").

In light of ICE's violation of a court order and refusal to facilitate Guimaraes' appearance at her arraignment, the Court concludes that the public interest is best served by dismissing her indictment with prejudice to reindictment on the same charge. This conclusion is based on the conduct of ICE, not on that of the AUSA, who acted in good faith throughout and properly sought a Rule 48(a) dismissal when she learned that Guimaraes had been deported. But it is incumbent on Executive Branch agencies to coordinate their actions to ensure that all criminal defendants' constitutional and statutory rights are preserved.

## CONCLUSION AND ORDER

For the foregoing reasons, the United States' request to dismiss the April 10, 2025 indictment of Wandis Cleia Guimaraes, ECF 64, is GRANTED in part and DENIED in part. The indictment is DISMISSED, but such dismissal is with prejudice to reindictment on the same charge.

SO ORDERED.

/s/ Julia E. Kobick
JULIA E. KOBICK
UNITED STATES DISTRICT JUDGE

Dated: July 9, 2025